NOT FOR PUBLICATION

**United States District Court**
**for the District of New Jersey**

| | |
|---|---|
| DANIELLE KANE, ON BEHALF OF DAVID KANE, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil No.: 12-1899 (KSH) <br><br> **Opinion** |

**Katharine S. Hayden, U.S.D.J.**

After plaintiff prevailed in this Social Security appeal, Langton & Alter, her attorneys, filed a motion for fees under the Equal Access to Justice Act ("EAJA," 28 U.S.C. § 2412(d)). [D.E. 20.] The Commissioner of Social Security opposes this motion [D.E. 23], but does not contend that the amount requested by Langton & Alter is unreasonable, that the firm's fee calculations are incorrect, or that the government's position in this matter was "substantially justified." Rather, the Commissioner "asserts that [the] sole issue before this Court is whether Plaintiff is entitled to compensation for hours worked by her Counsel when her Counsel simultaneously was declared by the New Jersey State Supreme Court to be administratively ineligible to practice law in the State of New Jersey." (Response 1–2.)

## I. Background

Although this case arose under federal law, the Commissioner's argument is based on the interplay of several New Jersey Court Rules—which, in turn, reflect New Jersey's procedures for

licensing, registering, and assessing attorneys. As such, a brief overview of the relevant New Jersey rules and procedures is in order.

A) New Jersey Annual Registration and Assessment

Lawyers admitted to the bar in New Jersey must file an annual attorney registration statement. *See, e.g.*, N.J. Ct. R. 1:20-1(c). They must also pay a single, annual assessment that is divided among four recipients: the Lawyers' Fund for Client Protection (the "Fund"), the Lawyers Assistance Program ("LAP"), the New Jersey state attorney disciplinary system, and the Board on Continuing Legal Education. *See* New Jersey Lawyers' Fund for Client Protection, 2013 Instructions, http://www.judiciary.state.nj.us/attyreg/cpfinstructions.pdf (last visited Dec. 8, 2013); *see also* Frequently Asked Questions, Annual Assessment – New Jersey Attorneys Rule 1:28-2, http://www.judiciary.state.nj.us/cpf/annual.htm (last visited Dec. 8, 2013). The amount to be paid by an attorney is determined by year of bar admission:

| 2013 Fee Schedule - New Jersey Attorneys | | |
|---|---|---|
| **Admitted:** | **Fee if received on or before April 26, 2013** | **Fee if received after April 26, 2013 but before Ineligible List** |
| 1964 or prior to 1964 | Exempt from payment | Exempt from payment - No late fee |
| 1965 - 2009 | $199 | $239 |
| 2010 or 2011 | $170 | $210 |
| 2012 | $35 | $75 |
| 2013 | Exempt from payment | Exempt from payment - No late fee |

Annual Assessment, https://www.judiciary.state.nj.us/cpf/fee.htm (last visited Dec. 8, 2013).

An attorney's obligation to update registration and pay the required assessment is enforced, in the breach, by Order of the Supreme Court deeming him/her administratively ineligible to practice law in New Jersey. Although placement on this status is "not a disciplinary action akin to suspension or disbarment," the names of the affected attorneys go on an Ineligible

2

List that is published both on the website of the New Jersey Courts and in the New Jersey Law Journal. *See* N.J. Ct. R. 1:20-1(b), (d); N.J. Ct. R. 1:28-2(a); N.J. Ct. R. 1:28B-1(e); Frequently Asked Questions – Annual Assessment, http://www.judiciary.state.nj.us/cpf/billing.htm (last visited Dec. 8, 2013). The most recent list, from September 2013, contains 44 pages of in-state New Jersey attorneys and 189 pages of out-of-state attorneys. *See* Supreme Court of New Jersey, Attorney Ineligibility Order Pursuant to Rule 1:28-2(a), http://www.judiciary.state.nj.us/notices/2013/n131003a.pdf (last visited Dec. 8, 2013). In practice, the "separate" ineligibility provisions of the disciplinary system, the Fund, and LAP work in tandem because each is based on a single assessment, so the published list covers all three categories of ineligibility.

Getting one's name removed requires payment of the past-due amount plus late fees and penalties. Once that is done, the attorney is "reinstated automatically . . . without further order of the Court." *See, e.g.*, N.J. Ct. R. 1:28-2(a). The attorney's name is then published on one of the occasional "reinstatement" lists promulgated by the Fund. *See, e.g.*, http://www.judiciary.state.nj.us/notices/2013/n131031f.pdf (last visited Dec. 8, 2013). Extreme delay in compliance brings additional penalties, including revocation of the license to practice law in New Jersey upon seven consecutive years of nonpayment. *See, e.g.*, N.J. Ct. R. 1:28-2(c).

### B) Interest On Lawyers' Trust Accounts (IOLTA)

New Jersey lawyers in private practice are required to set up business and trusts accounts that conform to New Jersey Court Rule 1:21-6, the recordkeeping rule. Relevant here is the provision that client funds be held in trust accounts at approved New Jersey banks, and that at least one of the trust accounts be for the benefit of the IOLTA program (which will be explained below). Annually, attorneys must verify that their firm's trust and business accounts comply with the recordkeeping rule and with New Jersey Court Rule 1:28A-2, which requires that any

3

IOLTA fund trust account be registered, *i.e.*, that banking information about it (institution and account number) be sent to the IOLTA Trustees. According to the Commissioner, the instant case requires that the Court determine whether Langton & Alter's oversight in failing to provide this information in a timely manner disentitles them to an award of fees under the EAJA.

IOLTA is a law-related public service program, enacted in various forms throughout the United States and Canada, that creatively transforms an unremarkable aspect of legal practice into a fund that underwrites law-related public programs.

> IOLTA accounts grew out of an insight, first recognized in Australia, that quirks in the banking system would allow for the generation of funds for a worthy social cause, specifically legal assistance for the poor, without noticeable financial sacrifice by anyone. Attorneys commonly hold their clients' funds in bank accounts, which, in theory, might bear interest. However, often the sums held for an individual client are so small, or are held for so short a time, that the interest earned is less than the transaction costs of establishing and administering the account. . . . If these small sums, however, were aggregated into a single account, and the costs of allocating interest to each individual client were eliminated, that account would generate some net interest. . . . The creators of the IOLTA concept . . . realized that . . . the interest could be diverted toward a program to help fund legal assistance for low-income clients. In this modern version of alchemy, a public good could be funded without depriving individuals of anything that they had or reasonably expected to obtain.

Donald L. Beschle, *The Supreme Court's IOLTA Decision: Of Dogs, Mangers, and the Ghost of Mrs. Frothingham*, 30 Seton Hall L. Rev. 846, 848–49 (2000) (footnote calls omitted); *see also Awala v. Fed. Pub. Defender*, 176 F. App'x 334, 335 (3d Cir. 2006) (nonprecedential per curiam). IOLTA programs have been deemed constitutional by the United States Supreme Court. *See Brown v. Legal Found. of Wash.*, 538 U.S. 216, 240–41 (2003).

New Jersey Court Rule 1:28A mandates that "every attorney who practices in this State shall maintain" an IOLTA account, the interest from which is "to be used to fund law-related, public-interest programs." N.J. Ct. R. 1:28A-1(a), A-2(a). The Rule also establishes the penalties for noncompliance:

> The accounts required by this Rule shall be registered annually with the IOLTA Fund in the manner prescribed by the IOLTA Fund Trustees. *The Trustees shall annually report the names of all attorneys failing to comply with the provisions of this Rule to the Supreme Court for inclusion on a list of those attorneys deemed ineligible to practice law in New Jersey by Order of the Court.* An attorney shall be removed from the Ineligible List without further Order of the Court on submission to the Trustees of the prescribed forms.

N.J. Ct. R. 1:28A-2(d) (emphasis added.)

Although facially similar to the ineligibility process for the assessment provisions discussed above, the IOLTA obligation differs in several important respects. First, only attorneys engaged in private practice are affected, and they are not obliged to pay money, but rather simply to pave the way for the collection of interest generated from eligible trust accounts by giving the IOLTA Trustees their banking information. Second, should an attorney fail to do this in a timely fashion, thereby winding up ineligible to practice, on submitting the information the attorney is immediately reinstated; there are no fees associated with reinstatement or enumerated penalties for consecutive terms of noncompliance. Third, the IOLTA Ineligible List is its own discrete entity, which is published separately from the assessment Ineligible List. Its most recent iteration, from October 2013, contains about 950 names, a sum whittled down by occasional "reinstatement" updates published periodically throughout the year. *See* Notice to the Bar – Re: IOLTA Ineligible List, http://www.judiciary.state.nj.us/notices/2013/n131030b.pdf (last visited Dec. 8, 2013).

### C) The Commissioner's Argument

The basis for the Commissioner's position, which it has taken in several pending cases in this District—one of which, *Correra v. Commissioner of Social Security*, No. 12-5493, is currently pending before this Court—is that plaintiff's attorneys were administratively ineligible to practice law in the State of New Jersey from October 22, 2012, through June 26, 2013,

because they had been sanctioned for failing to comply with IOLTA requirements.[1] Consequently, relying on a specific Local Rule in this District, the Commissioner contends that the attorneys may be ineligible to receive compensation under the EAJA for 28.8 hours of their work in this case.[2]

D) The Attorneys' Response

Langton & Alter admit that they were on the IOLTA Ineligible List, stating that they forgot to "file the mandatory IOLTA form advising the New Jersey State Bar of any changes" in their IOLTA account. (Reply 1 [D.E. 24].) But they argue that their New Jersey administrative ineligibility did not affect their ability to practice in this District, and hence should not affect their EAJA fee eligibility.

## II. Discussion

A) Fees Under the EAJA

Originally passed to "allow individuals and small businesses to fight back against unjustified government action," *Handron v. Sec'y Dep't Health and Human Servs.*, 677 F.3d 144, 145 (3d Cir. 2012), the EAJA has expanded in purpose to "insure that legal costs do [not]

---

[1] The Commissioner has submitted New Jersey Supreme Court orders in which plaintiff's attorneys are listed as administratively ineligible to practice in New Jersey based on their failure to fulfill their IOLTA obligations. The Court also takes judicial notice, *cf. Ieradi v. Mylan Labs., Inc.*, 230 F.3d 594, 598 n.2 (3d Cir. 2000), that the October 26, 2012 edition of the New Jersey Law Journal Online contains a lengthy Ineligible List that includes plaintiff's attorneys' names, while the July 29, 2013 edition of the Law Journal Online reports their removal from the list because "the[y] . . . have satisfied the requirement of [New Jersey Court Rule] 1:28A[-]2(a)."

[2] In proposing this calculation, the Commissioner is probably wrong. As indicated, publication in the list of "restored" attorneys, whether on the New Jersey Courts website or in the Law Journal, does not accurately reflect when an attorney is actually cured of his/her administrative ineligibility, because proper submission of IOLTA information automatically removes the sanction.

inhibit citizens from contesting government decisions in contexts such as social security benefits," *Grossberg v. Barnhart*, No. 04-2397, 2005 WL 703736, at *3 (3d Cir. Mar. 29, 2005) (nonprecedential). The fees, costs, and expenses covered by the EAJA, and thus those potentially reimbursable, include "reasonable attorney fees," and are awarded "to [the] prevailing party other than the United States." 28 U.S.C. § 2412(d)(1)(A), (2)(A); *see also Newmark v. Principi*, 283 F.3d 172, 174–79 (3d Cir. 2002) (discussing the EAJA statutory fee structure).

The statute imposes several restrictions on both the amount of a potential award and the parties to whom costs are to be tendered. For example, a litigant of great means might not be eligible to recoup fees, *see* 28 U.S.C. § 2412(d)(2)(B)(i), and attorneys cannot (without special dispensation) seek an amount calculated on an hourly rate higher than that specified by the statute, *see* 28 U.S.C. 28 U.S.C. § 2412(d)(2)(A)(ii). Further, requests for attorney fees must be backed up by an itemized statement. 28 U.S.C. § 2412(d)(1)(B). And a district court may reduce or deny an award of costs if "the position of the United States was substantially justified" or if "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A); *see also Taylor v. United States*, 815 F.2d 249, 253 (3d Cir. 1987) (discussing special circumstances as a discretionary decision of the district court). The "special circumstances" provision is a "safety valve" that gives "the court discretion to deny awards where equitable considerations dictate an award should not be made." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 303 (2d Cir. 2011) (quoting *Scarborough v. Principi*, 541 U.S. 401, 422–23 (2004)).

The EAJA does not cabin what kind of attorney activities may be reimbursed. Reimbursable activity is thus not limited to court appearances or brief writing; nor, for that matter, are awards restricted to the work of a "first chair" attorney. *See, e.g.*, *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 581 (2008) ("[A] prevailing party that satisfies EAJA's other

7

requirements may recover its paralegal fees from the Government at prevailing market rates.");
*Patel v. Att'y Gen.*, 426 F. App'x 116, 119 n.7 (3d Cir. 2011) (nonprecedential) ("Work conducted by associate attorneys, like that of experts, paralegals and other support staff, is recoverable under the EAJA.").

In *Priestley v. Astrue*, 651 F.3d 410 (4th Cir. 2011), a Social Security case, victorious plaintiffs sought reimbursement of fees that included work performed by out-of-state attorneys who "were not admitted to the South Carolina State bar and therefore did not qualify for admission to the bar of the district court [for the District of South Carolina]," and were not otherwise admitted *pro hac vice*. *Id.* at 413–14. Although the lawyers in question had "limited their involvement to submitting, in draft form, briefs and papers" for the appearing attorney to file, the Commissioner "argu[ed] that because [the attorneys] were neither licensed in South Carolina, nor admitted *pro hac vice*, they had engaged in the unauthorized practice of law when assisting in these cases," and were therefore not entitled to EAJA reimbursement. *Id.* There, as here, the Commissioner had opposed fee awards in "numerous other cases in the District of South Carolina, based on [the attorneys'] nonadmission to the bar." *Id.* at 114 n.\*.

The district court substantially denied reimbursement for the nonadmitted attorneys. With regard to one of the lawyers, the court relied on the "special circumstance" exception contained in 28 U.S.C. § 2412(d)(1)(A), in light of both "the public policy in favor of attorney licensure" and prior warnings directed at that attorney. *Id.* at 414.

On appeal, the Fourth Circuit reversed in light of the "broad definition" of "fees and other expenses" in the EAJA. The expansive statutory language, the Fourth Circuit indicated, "authorizes the plaintiffs to receive reimbursement for work performed by an attorney, regardless of whether the attorney performing the work *is admitted to practice or not*." *Id.* at 416

8

(emphasis added). The district court had "improperly linked the requirements for the practice of law in the district court with the requirements of the EAJA, thus limiting the scope of fees that the EAJA otherwise authorizes"; any local-rule violation committed by the attorneys "was so attenuated and technical that it would not affect the plaintiffs' claims for fee awards under the EAJA, which does not condition eligibility for reimbursement on whether an attorney is admitted." *Id.* at 416. Therefore, the Circuit held that "the use of nonadmitted lawyers for brief writing services does not present a 'special circumstance' sufficient to deny a fee award as 'unjust' under the EAJA," vacating in part the decision of the district court and remanding. *Id.* at 413, 419.

The reasoning in *Priestley* demonstrates that eligibility to practice is not, in itself, totally dispositive under the EAJA statutory scheme. For example, work performed by "summer associates . . . not admitted to practice" would be "reimbursable under the EAJA." *Id.* at 418. That said, *Priestly* is not all on point. The out-of-state attorneys there did not technically "practice" before the district court; at most, they "prepared only drafts of briefs and papers," and although "their names were sometimes included on briefs as attorneys for the plaintiffs and they stated in their EAJA affidavits that they were attorneys for plaintiffs, the nature of their brief-writing function . . . never changed." *Id.* at 417. And their ineligibility related simply to their not being admitted to practice before the district court in which their briefs were filed. The Fourth Circuit made it clear that it was not confronting the "unauthorized practice of law," indicating further that it might yet be "unjust to compensate [attorneys] who, without proper licensure, directly represent clients and, on their behalf, file papers and appear before the court." *Id.* at 417–18.

9

Here, by contrast, plaintiff's attorneys actively represented the plaintiff, filing papers and appearing in Court on her behalf. According to the Commissioner, the sanction imposed under New Jersey Court Rules for the attorneys' failure to submit information about their IOLTA accounts rendered their work in this case the unauthorized practice of law, which must be taken into account when the Court considers their application for fees under the EAJA. *See Vincent*, 651 F.3d at 304 (discussing "heightened importance" of clarity "in the context of Social Security appeals, which predominate among the cases in which EAJA awards are made").

B) The District's Local Rules

In *Abdallah v. Pileggi*, 914 F. Supp. 1115 (D.N.J. 1996) (Hedges, Mag. J.), an attorney failed to timely make payment to the Fund. *Id.* at 1116. As a result, the attorney became ineligible to practice law in New Jersey pursuant to New Jersey Court Rule 1:28-2(a). *Id.* Construing then-General Rule 4B for the District of New Jersey, the court discussed the "link between [the federal] Bar and that of the State," observing that "[b]eing on the Ineligible List does not [a]ffect licensure but, instead, ability to practice." *Id.* at 1116–17. In effect, the court held that running afoul of Fund obligations, and incurring an administrative suspension under Rule 1:28-2(a), did *not* render an attorney ineligible to practice in this District. *See id.* at 1117–20. The context of the decision was not a fee award, but rather the attorney's ability to prosecute the case at all in the District of New Jersey.

In 1996, then-Rule 4B was amended to overturn the result in *Abdallah*. That amendment is preserved in the present Local Rule 101.1(b), which states in part: "Any New Jersey Attorney deemed ineligible to practice law by order of the New Jersey Supreme Court entered pursuant to New Jersey Court Rule 1:28-2(a) shall not be eligible to practice law in this Court during the period of such ineligibility." D.N.J. L. Civ. R. 101.1(b); *see also* Allyn Z. Lite, *New Jersey*

10

*Federal Practice Rules,* Comment 3 to D.N.J. L. Civ. R. 101.1, at 420 (2013) (discussing the rule revision as a reaction to *Abdallah*). Similar language was added to the rule governing *pro hac vice* admissions and practice. *See* D.N.J. L. Civ. R. 101.1(c)(2).

The Commissioner asks the Court to consider whether this rule change—tethering compliance with Fund contributions to eligibility to practice in this District—extends further to IOLTA compliance, even though Rule 101.1(b) is silent on what should occur if an attorney duly admitted to practice in this District is placed on other kinds of New Jersey administrative ineligibility. The Commissioner points out that the ineligibility portions of the IOLTA and Fund rules are substantially the same. *Compare* N.J. Ct. R. 1:28-2(a) ("The treasurer shall annually report the names of all attorneys failing to comply with the provisions of this Rule to the Supreme Court for inclusion on the list of those attorneys deemed ineligible to practice law in New Jersey by order of the Court."), *with* N.J. Ct. R. 1:28A-2(d) ("The Trustees shall annually report the names of all attorneys failing to comply with the provisions of this Rule to the Supreme Court for inclusion on a list of those attorneys deemed ineligible to practice law in New Jersey by Order of the Court."). Hence, arguing by analogy, the Commissioner proposes that Langton & Alter fall under the reciprocal sanction imposed under Local Rule 101.1(b) and should be deemed ineligible to practice law in this District during the relevant period. The Court disagrees.

### C) District of New Jersey Rule 101.1(b) Does Not Affect IOLTA-Noncompliant Attorneys

Local Rule 101.1(b) specifically addresses only those attorneys deemed administratively ineligible to practice pursuant to New Jersey Court Rule 1:28-2(a). It does not cover those attorneys incurring non-licensure-related administrative restrictions under any other New Jersey Court Rules, even though those New Jersey Court Rules existed prior to the 1996 revision of

what is now Local Rule 101.1(b). *See, e.g.*, Sylvia Pressler & Peter Verniero, *Rules Governing the Courts of the State of New Jersey* 403 (2013) (recounting legislative history of N.J. Ct. R. 1:28A-2, including the effective-1994 addition of subparagraph d). Thus, under canons of statutory construction, the express mention of New Jersey Court Rule 1:28-2(a) in Local Rule 101.1(b) weighs in favor of excluding similarly worded counterparts in other sections of the New Jersey Court Rules. If the drafters of revised Local Rule 101.1(b) wished to make eligibility to practice in this District contingent on IOLTA good standing, they could have easily included language about such preconditions to practice in an updated Local Rule 101.1(b), but they did not. *See also Shamshoum v. Bombay Cafe*, 257 F. Supp. 2d 777, 779–81 (D.N.J. 2003) (Rosen, Mag. J.) (discussing Local Rule 101.1(b) using canons of statutory construction in the context of the bona-fide office requirement, while emphasizing the Rule's references to those "licensed to practice by the Supreme Court of New Jersey").

The significant differences between IOLTA and Fund attorney obligations support this outcome. IOLTA requirements apply only to those engaged in the *private* practice of law in New Jersey. Those attorneys are obliged to place client funds in New Jersey banking institutions at interest to a client or IOLTA. After that, the lawyer's role in IOLTA compliance is passive; the collection of interest earned on IOLTA accounts is a matter between the bank and the Trustees of the IOLTA fund. The attorney is not making a contribution to a fund that exists to protect clients (the Fund); or supporting a program that addresses lawyers in crisis, inuring to the benefit of clients and fellow attorneys (LAP); or supporting the disciplinary system—all obligations of practice which this District has decided are deserving of reciprocal enforcement. Furthermore, the sanctions for noncompliance differ markedly. As discussed above, the IOLTA ineligibility list is separate from the Fund list, and IOLTA delinquency does not expose an

attorney to a financial penalty or loss of license. In short, IOLTA obligations arise in the context of how state practitioners set up their law practices, which is none of the Commissioner's or this Court's business.

Along with common sense, there is another point worth making: a goal of the New Jersey IOLTA program is to promote "equal access to justice." *See* What is NJ IOLTA?, http://www.ioltanj.org/grnt_home.html (last visited Dec. 13, 2013). How contrary to bend the technicalities of IOLTA into an assault on the ability of attorneys to vindicate rights under an important federal statute that—as is made clear by its very name—shares the same important mission!

The Court holds that Local Rule 101.1(b) does not mandate either on its face or in its spirit that this Court deny Langton & Alter's motion for a fee award on the theory that these attorneys were engaged in the unauthorized practice of law before the federal courts. Put simply: the Langton & Alter law firm was not violating this District's Local Rules by overlooking the New Jersey IOLTA reporting obligation and falling into state administrative noncompliance, and the Commissioner has failed to present "special circumstances" that would make a fee award under the EAJA unjust.

### III. Conclusion

The Commissioner put at issue eligibility for fees, not the amount, and the Court has ruled. An appropriate order will be entered granting Langton & Alter's motion for fees in the full amount sought.

December 18, 2013 /s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.